■ In the Matter of CEDAR GROVE CIVIC HOMEOWNERS ASSOCIATION, INC., et al., Appellants, v THOMAS A. MAUL, as Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities, et al., Respondents. [639 NYS2d 122]

The issue in this case is whether the Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities (hereinafter the Commissioner) properly rejected the objection of Community Board 7 to the establishment of a community residential facility for seven developmentally disabled adults.

Mental Hygiene Law § 41.34 (c) (1) (C) permits a municipality to: "object to the establishment of a facility of the kind described by the sponsoring agency because to do so would result in such a concentration of community residential facilities for the mentally disabled in the municipality or in the area in proximity to the site selected or a combination of such facilities with other community residences or similar facilities licensed by other agencies of state government, including all community residences, intermediate care facilities, residential care facilities for adults and residential treatment facilities for individuals with mental illness or developmental disabilities operated pursuant to article sixteen or article thirty-one of this chapter and all similar residential facilities of fourteen or less residents operated or licensed by another state agency, that the nature and character of the areas within the municipality would be substantially altered."

In the City of New York, the municipality is "the community board with jurisdiction over the area in which such a facility is to be located" (Mental Hygiene Law § 41.34 [a] [3]), in this case Community Board 7.

At the hearing on the objection raised by Community Board 7, the Chairperson of the Community Board testified that the Community Board decided to "make a stand" against the ambiguity of the law and what it perceived as a conflict between the Mental Hygiene Law and the New York City Charter. The Chairperson also testified that, in his opinion, the area governed by Community Board 7 has more than its fair share of community residential facilities. He testified that there are 19 small residential-care facilities housing 14 persons or less (including eight apartments) within the jurisdiction of Community Board 7, two large health-care facilities, and "three nursing homes totaling more than one thousand beds *that will soon be open*" (emphasis supplied). The Chairperson further testified, "Community Board 7 has large-scale senior citizen and nursing homes which operate without a hitch."

In rejecting Community Board 7's objection, the Commissioner was only required to consider the criteria set forth in the Mental Hygiene Law, and his consideration was limited to existing facilities as opposed to facilities that are not yet open *(see,* Mental Hygiene Law § 41.34 [c] [5]; *Roberts v Selzak,* 89 AD2d 559).

The Commissioner, after considering the concentration of community residential facilities and other similar facilities in the neighborhood in question, i.e., Queensboro Hill, and in the area governed by Community Board 7, concluded: "[E]ven if I

were to consider all of these facilities mentioned by the Community Board, the record is void of any evidence to support the determination that the establishment of the proposed facility, in conjunction with all these existing facilities would substantially alter the nature and character of the area in question."

The Commissioner's finding is based on substantial evidence. The Chairperson of Community Board 7 acknowledged that the area covered by the Community Board is 12.7 square miles with a population of 221,763, the largest population of any Community Board in the City of New York. Moreover, the Chairperson provided no concrete evidence that the establishment of the facility in question for seven developmentally disabled adults, together with the other existing facilities, would change the nature and character of the area (see, Grasmere Homeowners' Assn. v Introne, 84 AD2d 778).

The appellants' remaining contentions are without merit. O'Brien, J. P., Santucci, Altman and Goldstein, JJ., concur.